1 | David J. Shapiro, Esq   SBA#118325
Law Offices of David J. Shapiro
2 | 22231 Mulholland Hwy., Ste. 207b
Calabasas, CA. 91302-5151
3 | Telephone:  818-225-2929
Facsimile:   818-225-2870
4 | Email:       Lawdjs@yahoo.com

5

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **WESTERN DIVISION**

11 | CV12 - 00625 MMM (FMOx)

12 | JAMES BOZAJIAN,                                    )      CASE NO.

13 |         Plaintiff,                                        )      COMPLAINT FOR DAMAGES,
                                                          )      INJUNCTIVE RELIEF, AND
14 |         V.                                              )      DECLARATORY RELIEF
                                                          )
15 | COUNTY OF LOS ANGELES; STEVE )
COOLEY, individually and in his              )
16 | official capacity; CURTIS HAZELL,       )      DEMAND FOR JURY TRIAL
individually and in his official capacity, )
17 | JOHN SPILLANE, individually and in    )
his official capacity; JOHN ZAJEC,         )
18 | individually and in his official capacity; )
JACQUELYN LACEY, individually          )
19 | and in her official capacity, JANET       )
MOORE, individually and in her            )
20 | official capacity ; SHARON               )
MATSUMOTO; and DOES 1-10;            )
21 |         Defendants.                                  )
                                                          )
22 | _____ )
                                                          )
23 |                                                        )

24

25

26

27

28

---

1

**COMPLAINT**

**PRELIMINARY STATEMENT**

This case arises out of a pattern of harassment and selective discrimination, set forth by Defendant, Steven Cooley, the District Attorney of Los Angeles County, and his senior officials. They have displayed of pattern of said conduct with particular animus toward plaintiff herein. As an underlying basis for all Defendants' actions, is the already admitted anti-union policies and clear violations of Plaintiff's Constitutional Rights.

Defendants have admitted in sworn testimony that they have and continued to retaliate against Plaintiff and all such prosecutors who are active members and participants of ADDA. Defendants' discriminatory practices including transferring Plaintiff, (a senior union member) to juvenile courts, consistently transfer, harass and cajole him to attempt to force him out of both the ADDA Union and the District Attorneys' Office.

Defendants use District Attorney Investigators, (ie..law enforcement officers working directly for Defendants), to harass, intimidate and spy on the Plaintiff, and others associated in a Board capacity for ADDA.

Each of these acts constitutes an adverse employment action substantially motivated by protected association and/or speech, including speech touching on public policy as is more fully set forth herein.

Defendants' retaliation against Plaintiff, individually, and as a long-standing Board Member and President of ADDA, was extreme and vindictive at times. Plaintiff was punitively transferred on numerous occasions, illegal suspension without pay, false allegations in performance evaluations, and testimony confirming a pattern of selective discrimination is on record as well.

Plaintiff sought to exercise his First Amendment Rights of Freedom of Speech and Freedom of Association to engage in work and ADDA union-related activities without fear of being subjected to harassment, intimidation and Defendants' policy of selective discrimination.

## JURISDICTION AND VENUE

1

2    This Court has subject matter jurisdiction over this case under 28 U.S.C. Section 1331, as

3    this action arises under the First and Fourteenth Amendments to the United States Constitution;

4    under 28 U.S.C. Sections 1343 (a)(3), in that Plaintiff seeks redress for deprivations made under

5    color of State Laws of Rights, Privileges, and immunities secured by the U.S. Constitution ; under

6    28 U.S.C. Sections 1343 (a)(4), in that Plaintiff seeks damages and equitable relief under 42 U.S.C.

7    Sections 1983, which provide a cause of action for the protection of civil rights; under 42 U.S.C.

8    Section 1988 (b) for an award of attorney fees; under 28 U.S.C. Section 2201(a) to secure

9    declaratory relief; and under 28 U.S.C. Section 2202 to secured preliminary and permanent

10   injunctive relief.

11

12   Venue is proper in the United States District Court for the Central District of California

13   under 28 U.S.C. Section 1391(b) , because the events giving rise to Plaintiff's claims described in

14   this Complaint occurred within Los Angeles County.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIES**

Plaintiff James R. Bozajian ("Plaintiff") is a Deputy District Attorney for the County of Los Angeles. He has been employed in that capacity since 1990.

Defendant Steve Cooley ("Cooley") is the District Attorney of Los Angeles County. He has served in that capacity since being elected to office in 2000.

Defendant Jacquelyn Lacey ("Lacey") is presently the Chief Deputy District Attorney of Los Angeles County. She previously served as an Assistant District Attorney and as a Bureau Director.

Defendant John Spillane ("Spillane") is presently a Head Deputy District Attorney for Los Angeles County. He previously served as Chief Deputy District Attorney, as an Assistant District Attorney, and as a Bureau Director.

Defendant John Zajec ("Zajec") is presently a Head Deputy District Attorney for Los Angeles County. He previously served as a Bureau Director.

Defendant Janet Moore ("Moore") is presently a Bureau Director for Los Angeles County. She previously served as a Head Deputy District Attorney.

Defendant Sharon Matsumoto ("Matsumoto") is presently an Assistant District Attorney for Los Angeles County.

Defendant Curtis Hazell ("Hazell") is presently an Assistant District Attorney for Los Angeles County. He previously served as a Bureau Director.

Plaintiff is informed and believes and thereon alleges that at all relevant times herein, each of the fictitiously named Defendants was an agent, employee, or co-conspirator of one or more of the named Defendants, and was acting within the course and scope of said agency or employment.  Plaintiff is further informed and believes, and thereon alleges that each of the fictitiously named Defendants aided and assisted the named Defendants in committing the worngful acts alleged herein, and that Plaintiff's damages, as alleged herein, were proximately caused by such Defendants.

Plaintiff is informed, believes and thereon alleges that Defendants, and each of them, conspired and agreed amongst themselves to do the acts complained of herein and were, in doing such acts, acting pursuant to and in furtherance of said conspiracy, and each Defendant sued herein is jointly and severely liable to Plaintiff for the damages alleged herein.

Defendants, and each of them, and/or their agents/employees knew or should have known that each of the remaining Defendants, individually and together in combinations, were engaging in the conduct alleged herein.

### FACTS

### 1.

### DEFENDANTS ENGAGED IN A PATTERN OF DISCRIMINATION  AND HARASSMENT OF PLAINTIFF DESPITE PLAINTIFF'S OUTSTANDING RECORD

1.     Plaintiff has served as an elected member of the Board of Directors of the Los Angeles County Association of Deputy District Attorneys ("ADDA") continuously since 1993. He was President of ADDA in 1996 and 1997, and has also served

several terms as Vice- President and Secretary during his tenure on the Board. Plaintiff is the longest-serving Director in the history of the organization and one of its most active members. These facts were well known to Defendants at all time periods relevant to the instant matter.

2.   In sworn testimony taken at administrative hearings in 2008-11, Defendants acknowledged that they did not know of any prosecutor who has been more active in ADDA for a longer period of time than Plaintiff.

3.   Plaintiff has routinely received "Outstanding" ratings on his annual "Performance Evaluations" and has been highly enough regarded by his colleagues to be elected and re-elected to the ADDA Board of Directors by wide margins for 19 consecutive years.

2.   Plaintiff has served as an elected member of the Calabasas City Council since 1997. He was/is Mayor of Calabasas in 1998-99, 2003-04, 2007-08, and 2011-12.

3.   Plaintiff has served as an elected member of the Board of Directors of the California Contract Cities Association since 2008. He is currently President of the organization.

4.   In addition to the foregoing, Plaintiff is actively involved in many aspects of municipal, state, and federal politics. The level of Plaintiff's political and union activities has at all relevant times been well known to Defendants.

5.   Now in its 56th year of existence, ADDA is the largest local organization of prosecutors in the country, representing the approximately 1,000 prosecutors in the District Attorney's Office. In 2008, ADDA became the formal union

3

representing rank-and-file Deputy District Attorneys in Los Angeles County. Plaintiff was one of a small handful of individuals who were instrumental in converting ADDA into a full-fledged union. This fact was well known to Defendants at all relevant time periods.

6.   During Cooley's tenure as District Attorney, Defendants have consistently used their positions of authority over Plaintiff to coordinate attempts to embarrass, threaten, harass and intimidate him. These actions were executed in order to retaliate against Plaintiff for engaging in union-related activities and for opposing Cooley's political agenda.

7.   During the course of presiding over numerous formal Grievances filed by Plaintiff (2003 to present), Defendants have steadfastly refused to comply with the District Attorney's selfpromulgated procedures for conducting Grievance hearings.

8.   During his initial campaign for District Attorney in 2000, Cooley pledged to maintain a close working relationship with ADDA. He criticized his predecessor for being ªafraid to face his troops and the public, communicating instead through a phalanx of political mouthpieces.º Similarly, Cooley denounced the incumbent for ªbeing at war with the ADDA for years and insulting all deputies by refusing to attend ADDA meetings.º Once he assumed office, however, Cooley's relationship with ADDA deteriorated. By 2004-05, he severed ties with and begun a formal ªboycottº of all ADDA events and activities. At his direction, Cooley's management staff (including Defendants) has followed suit.

9. On multiple occasions, Defendants have actively sought to interfere with ADDA's internal elections. As early as 2001-02, Cooley personally confronted Plaintiff and advised him not to seek re-election to the ADDA Board of Directors. In 2005-06, Cooley tacitly endorsed and supported a rival slate of candidates to run against incumbent board members, including Plaintiff.

10. The incumbents (including Plaintiff) prevailed in the election by overwhelming margins.

11. The District Attorney's Office has long employed two internal devices to facilitate intra-office communications: ªCounty Messenger,º to deliver regular mail and physical objects from place to place; and ªLotus Notes,º an internal e-mail network. Both systems are publicly funded and operated. Despite clearly delineated administrative rules governing the use of these communicative tools, Defendants have repeatedly used them for partisan political purposes, including the destruction of the union.

12. Concomitantly, Defendants have prevented ADDA and Plaintiff from using these same media to respond to anti-union propaganda disseminated by Defendants. This history of content-based restrictions, prior restraints, and selective enforcement of applicable administrative rules dates back to 2002 and continues to the present time.

13. From at least 2005 to the present, Plaintiff has personally led efforts by ADDA to curtail Defendants' ongoing consumption of public resources in the manner described herein. These efforts were well known to Defendants .

14. Defendants have sought to curtail prosecutors' use of the Internet to communicate with each other, even when those communications originate from

5

private sources and County time and resources are not consumed. From 2002 to 2006, there were at least 113 mass e-mails sent by Deputy District Attorneys from private, outside computers to all fellow prosecutors at County office locations. Additionally, there were an untold number of other such e-mails sent from prosecutors to their colleagues utilizing office computers. Many of these communications were political in nature, some of them involving ADDA and unionization. For nearly four years, the Administration neither dissuaded employees from engaging in this conduct nor initiated any form of disciplinary action.

## Injuries Being Sustained by Plaintiff
## Directly as a Result of Defendants' Policy of Discrimination

15. Suddenly and without warning, the District Attorney dispatched two pairs of District Attorney Investigators in 2006 to personally serve two ADDA Board members (one of them thenPresident Steve Ipsen, the other one Plaintiff) with letters signed by Spillane. The letters ordered Plaintiff to cease sending out e-mails relating to ADDA business, threatening consequences up to and including termination of employment — even though Plaintiff had never, in fact, sent any such communications. No other personnel were so warned. This episode occurred during a highly contentious ADDA election cycle where the Administration was supporting a slate of rival candidates to oust incumbent board members like Plaintiff.

16.  After this incident, Defendants permitted and even encouraged other deputies to distribute information critical of ADDA using precisely the same media — again, without reprisal.

17.  In 2003, the Cooley sent out an e-mail to all personnel in the form of a campaign letter from an individual (not employed with the County), for the express purpose of promoting that person's candidacy for public office. The individual to whom this free advertisement was provided actually mentioned an endorsement by Cooley in the very text of the e-mail. In an explanatory message accompanying the letter, the Administration acknowledged that it was sending out the email free of charge; that it was to be considered a one-time-only ªexceptionº to standard office policy; and that its distribution was based on a previous agreement to send out the letter due to a ªmisunderstandingº of County rules when making the commitment. The person in question happened to be one of the District Attorney's more powerful political allies, and had tendered a $1,000 contribution to Cooley's re-election bid just before the e-mail was authorized for distribution.

18.  During his 2004 re-election campaign, Cooley formally asked ADDA to hold an office-wide plebiscite. In past election cycles, ADDA had traditionally conducted straw polls of all deputies to determine their preferences among the prospective candidates for District Attorney. The ADDA Board of Directors submitted to the District Attorney's request. During the plebiscite, Cooley actively encouraged use of office time and resources to handle the election process. ADDA Board members were permitted to use County Messenger to deliver and collect ballots, to use office telephones and computers for communication, and to count ballots in the District Attorney's own conference room during working hours.

19.  In 2005, Cooley used the Lotus Notes system to announce his intentions with respect to seeking a partisan political office.

20.  Other internal mass e-mails having nothing to do with criminal prosecution have been distributed by Defendants in violation of the Administration's own written

1   guidelines governing the use of Lotus Notes. These communications included such

2   things as a notice for the private sale of a gun (2003), and multiple advertisements for

3   alcohol and tobacco products (2006-11).

4
5   21.  From 2005 to the present time, Plaintiff has taken a leading role in criticizing the

6   Cooley Administration in various public media. Much, if not most, of this criticism was

7   undertaken on behalf of ADDA. Plaintiff's political criticisms were well known to

8   Defendants at all relevant time periods.

9   22.  From 2005 to 2011, Plaintiff served Defendants with a series of requests pursuant

10  to the California Public Records Act (Government Code Section 6250, et seq.). Several

11  of these requests were made on behalf of ADDA and/or in Plaintiff's capacity as a

12  Director thereof. Much of the information collected from these requests have proven

13
14   politically damaging to Defendants, who have at various times expressed open

15  displeasure with Plaintiff's actions in this regard.

16
17  23.  In his 2005-06 annual publication entitled, ªReport to the People,º Cooley

18  plagiarized 24 essays actually authored by ADDA members (including Plaintiff) solely in

19  an effort to promote his own public image. When Plaintiff, acting through ADDA,

20  requested that the record be corrected, Cooley refused.

21  24.  Since 2006, Cooley has ordered that ADDA Board members be banned from

22  communicating with each other or other employees through the County Messenger and

23  Lotus Notes systems — the latter, even when the messages are sent after working

24  hours and from outside computers. These orders have been enforced, in part, by

25  Defendants.

26

27

28

25.  In 2006, Cooley personally ordered the removal of the entire ADDA Board of Directors from the exterior portion of a County building while the Board was being sworn into office for a new term in office.

## II.  Acts and Admissions by Defendants Evidencing

## Their Policy of Harassment and Discrimination against Plaintiff Herein

26.  During the early stages of becoming a fledgling union (2007-09), Defendants stepped up their campaign to cripple ADDA. Among other tactics, Defendants discouraged prosecutors from becoming involved in ADDA and/or union activities. During sworn testimony taken at administrative hearings in 2009-10, Defendants Cooley and Lacey admitted to engaging in this conduct.

27.  In 2007, Cooley sent one of his top assistants to provide adverse and misleading testimony about unionization at a formal hearing before the Employee Relations Commission ("ERCOM"), the County administrative agency legally empowered with granting approval for unionization.

28.  Simultaneously, Cooley began a behind-the-scenes campaign to further thwart ADDA's unionization efforts. ADDA responded by sending the District Attorney a formal letter rebuking him for ignoring his legal and ethical obligations to remain neutral and refrain from engaging in anti-union activities.

29.  When formally asked by the ADDA Board of Directors in 2007-08 to remain publicly neutral on the question of unionization, both Cooley and Lacey categorically refused to do so.

30.  Notwithstanding Defendants' efforts, in 2008 ERCOM approved formal unionization for prosecutors for the first time since 1989.

31.  In 2007, Lacey attended an ADDA Board meeting wherein she stated that she had been specifically instructed by Cooley to discredit ADDA's union-related activities inasmuch as they involved criticisms of the District Attorney's re-election efforts.

32.  In an attempt to dissuade involvement with ADDA, Cooley has used his position as an elected official to launch unprovoked attacks against those active in the organization. Most of these attacks have been made publicly; some have attracted attention from the news media.

33.  While addressing the entire Board of Directors during one of its meetings in 2005, Cooley called the ADDA President a ªwhore.º Likewise, during a public appearance before a professional legal organization in 2007, he referred to the President as ªa piece of dirt.º During sworn testimony at an administrative hearing in 2010, Cooley referred to the entire ADDA Board of Directors, including Plaintiff, as ªshit.º

34.  Defendants have also used these media to disseminate rumors and engage in idle gossipmongering about ADDA Board members, including Plaintiff. In a string of one such email communications in 2007, members of the Administration derisively and repeatedly referred to Plaintiff and several other ADDA Board members as ªapes.º

35.  Defendants have refused to recognize ADDA's status as a union, and have refused to negotiate with the union in good faith.

III.    **INJURIES WERE SUSTAINED BY PLAINTIFF DIRECTLY AS A RESULT OF**

**DEFENDANTS' POLICY OF DISCRIMINATION AND ILLEGAL RETALIATION**

36.  In 2008, Defendants implemented a new ªPerformance Evaluationº policy without

seeking or permitting input from ADDA. ERCOM subsequently ordered the Cooley

Administration to discard the new evaluation procedures because of its failure to

negotiate with ADDA. Despite repeated protests, Plaintiff has not received an annual

ªPerformance Evaluationº (as required by the Los Angeles County Civil Service rules)

since 2007.

IV.

**APPLICATION OF THE UNION DISCRIMINATION POLICY TO**

**PLAINTIFF AS A LONGSTANDING BOARD MEMBER OF ADDA**

37.  Since ADDA achieved formal union status in 2008, Defendants have escalated their

efforts to discourage union membership. Chief among these are the Administration's

continued penchant for ordering frequent, punitive transfers of union activists (including

Plaintiff). These measures are designed to have a chilling effect on the willingness of

Deputy District Attorneys to join and participate in the union. The District Attorney has

 repeatedly imposed disciplinary actions — including suspensions and threats of

termination of ADDA Board members — for contrived reasons. Defendants have

continued to use public resources in the form of County Messenger and Lotus Notes to

distribute anti-union materials and impose political, content-based restrictions on what is

disseminated. According to recent and undisputed testimony at administrative

proceedings, Cooley and others acting on his behalf have personally approached

individual Deputy District Attorneys and solicited them to undermine the union. On at

least one occasion, Cooley used a member of his management team to improperly secure records from the County in the form of lists of those prosecutors who signed ADDA's initial petition in favor of unionization.

38.  In anticipation of the 2008 California Primary Election, Plaintiff published a political newsletter ("The Loyal Opposition") in May 2008 critical of then-incumbent Cooley (a candidate for reelection). Among other places, hard copies of that newsletter were mailed via U.S. Post (at Plaintiff's own expense) to Deputy District Attorneys throughout the County at their various office locations. After hastily conferring on the day the newsletter landed, Cooley, Spillane, Lacey, and Matsumoto conspired to order the illegal impoundment of this properly stamped and delivered mail. That same day, Plaintiff's personal office was ransacked by District Attorney Investigators acting at Defendants' direction; Plaintiff's effects were searched; and property belonging to ADDA went missing. At the time, Plaintiff was absent from work in order to attend a municipal conference on behalf of the City of Calabasas. That same day, Cooley ordered Lacey, Spillane, and Zajec to transfer Plaintiff immediately to an undesirable, punitive, entry-level assignment despite Plaintiff's status as a veteran prosecutor.

39.  Aside from the legalities involved, Defendants' outrageous conduct was in diametric conflict with prior direction provided to deputies regarding the proper distribution of political/labor mass mailings. Specifically, these guidelines had been previously articulated by none other than Lacey herself to the ADDA Board of Directors at a formal meeting. At the time the newsletter was confiscated, the Administration authorized the distribution of another mailing in precisely the same manner. That mailing was an invitation to an election night "victory party" to be hosted by the Cooley campaign on Election Night.

40.  During 2008-10, Defendants conducted labor-management negotiations with ADDA in bad faith.

41.  At one session in 2009, Lacey admitted to ADDA's representatives that the District Attorney had routinely authorized her to do little more than set the date for future meetings. During testimony provided at one administrative hearing in 2009, Zajec — speaking on behalf of the Administration — labeled labor-union negotiations as a "waste of time." On two occasions in 2009, the Administration's entire delegation to labor-management negotiating sessions abruptly rose and left the negotiating chamber, never to return. Afterwards, Matsumoto and Lacey sent a letter on District Attorney stationery to ADDA Board members who had participated at these meetings. These letters implied that the prosecutors could be subject to discipline for the "unprofessional" tenor of their comments during the session. Such letters were designed solely to intimidate union officials during the negotiating process. Shortly thereafter, Cooley distributed a letter to every employee via Lotus Notes blaming ADDA for the breakdown in negotiations. Neither Plaintiff nor ADDA was not permitted to issue any kind of response utilizing the same medium.

42.  Immediately after an unprecedented federal injunction was leveled against Cooley and his Administration in 2010 (for engaging in what the injunctive language termed "explicit retaliation" against union leaders "that is both striking and rampant"), Cooley wrote and distributed via Lotus Notes an open letter to all employees attacking those whom he felt were responsible for initiating the injunction. At a subsequent deposition in 2011 relating to the federal injunction, Cooley testified under oath that Plaintiff was one of the primary targets of that very letter. Neither Plaintiff nor ADDA was permitted to respond to this attack using Lotus Notes or other office resources.

43.  Since at least 2004, ADDA's political battles against Defendants have garnered and continue to receive widespread coverage in the media. They are a topic of considerable interest in political circles. Plaintiff has personally appeared in much of the media coverage on behalf of ADDA.

V.

**DEFENDANTS' ACTS OF RETALIATION AGAINST PLAINTIFF**

**ARE IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS AND ARE ACTS OF**

**HARASSMENT AND DISCRIMINATION SUBJECT TO PUNITIVE SANCTIONS**

44.  In 2006-07, Defendants ordered Plaintiff's immediate supervisors to lower his annual Performance Evaluations from "Outstanding" to lesser ratings. Under oath, Zajec admitted that no other employee assigned to Plaintiff's work location (wherein at any given time 25-30 prosecutors worked) had been treated in such fashion. Because Plaintiff's immediate supervisors refused such instructions, Defendants transferred Plaintiff to another work location so that another supervisor could lower future Performance Evaluations.

45.  At a deposition conducted in 2011 in connection with related federal proceedings, Cooley testified under oath that Plaintiff was one of two Deputy District Attorneys (out of approximately 1,000) who were "at the top of the list" of his political enemies within the District Attorney's office. Cooley further stated that he had shared his strong sentiments about Plaintiff with his management staff.

14

VI.

**DEFENDANTS ACTS OF RETALIATION AND DISCRIMINATION ARE**

**VIOLATIONS OF PLAINTIFF'S FIRST AMENDMENT RIGHTS TO FREE**

**SPEECH AND FREEDOM TO ASSEMBLE.**

46.  As a direct result of Plaintiff's political- and union-related activities during Cooley's tenure in office (2001 to present), Defendants have sought to punish Plaintiff by damaging his professional and political career.

47.  Between 2001 and 2011, Defendants have transferred (or sought to transfer) Plaintiff on virtually an annual basis. This amount of movement is practically unprecedented for a Deputy District Attorney of Plaintiff's level of seniority and experience. Moreover, several of these assignments were clearly punitive in nature, generally unheard of for a prosecutor with Plaintiff's professional background. In total, Defendants have ordered Plaintiff to 11 assignments in 11 years. Cooley personally ordered at least one and quite possibly two of these transfers, something that is otherwise rarely if ever done.

VII.

**PLAINTIFF BOZAJIAN PUNITIVE TRANSFERS**

**SOLELY AS RETALIATION BY DEFENDANTS**

48.  During this time period, Defendants personally monitored Plaintiff at the highest levels within the chain of command on a regular basis, frequently limiting the scope of his duties at particular office locations. This conduct is also outside the scope of normal office operations.

15

1

2

3
### 2001 PUNITIVE TRANSFER

4
49.  In 2001, Defendants transferred Plaintiff (a full-time employee) to a drug

5
court position otherwise held by part-time employees.

6

7
### 2001 SECOND PUNITIVE TRANSFER

8
50.  Later in 2001, Defendants transferred Plaintiff to a low-level assignment in the

9
juvenile courts generally reserved for newly hired deputies.

10

11
### 2005 THIRD PUNITIVE TRANSFER

12

13
51.  In 2005, Defendants transferred Plaintiff to a specialized unit which is commonly

14
reserved only for those individuals seeking the assignment (which Plaintiff did not).

15
### 2007 FOURTH PUNITIVE TRANSFER

16

17
52.  In 2007, Defendants transferred Plaintiff to a low-level assignment under the direct

18
supervision of an individual who was set to be a key adverse witness against Plaintiff at

19
an administrative hearing that was scheduled to commence within days of the transfer.

20
The transfer in question was to another low-level position which could have been filled

21
with any one of more than 100 prosecutors. Lacey personally executed written

22
instructions that upon his arrival, Plaintiff was not to be given duties normally associated

23
with prosecutors at his level of experience. This transfer was executed in order to

24
harass Plaintiff and damage his professional career.

25

26

27

28

**2011 FIFTH PUNITIVE TRANSFER**

53.  In 2011, Defendants attempted to transfer Plaintiff solely in order to accommodate Spillane's wishes that he [Spillane] not work at the same location as Plaintiff. Only under the threat of potential intervention by a federal district court was this transfer ultimately rescinded.

54.  Cooley had explored the possibility of running for State Attorney General in 2006. While Cooley was considering entering the race in 2005, Plaintiff made clear his [Plaintiff's] intention to support another candidate for that position. This fact was known to Defendants at all relevant time periods.

VIII.   **DEFENDANTS AUTHORIZED AND ENCOURAGED**
        **OPEN DISPLAYS OF HARASSMENT AGAINST PLAINTIFF**

55.  On occasion, Defendants have tolerated and even encouraged open displays of harassment against Plaintiff. In one unprovoked incident, Plaintiff was verbally assaulted by a supervisor in 2007 in the presence of several other employees. Despite formally reporting this matter through the chain of command (specifically, to Zajec, Lacey, and Spillane), there was no intervention whatsoever.

56.  During the course of administrative hearings before the Los Angeles County Civil Service Commission ("Civil Service Commission") and ERCOM in which both Plaintiff and ADDA were involved (2005 to present), Defendants ignored validly served subpoenas and refused to attend proceedings on several occasions. Moreover, in attempts to dissuade them from appearing at these proceedings, Defendants have actively sought to interfere with subpoenas validly served on County employees who were to provide adverse testimony to Defendants.

**SECOND CAUSE OF ACTION**

**(VIOLATION OF U.S. CONSTITUTION AMENDEMENT I-**

**FREEDOM OF SPEECH AGAINST ALL DEFENDANTS)**

57.  Plaintiff hereby incorporates by reference all of the foregoing allegations as thought fully set forth herein.

58.  Plaintiff is informed, believes, and therefore alleges that Defendant Cooley, and each such Defendant, has expressly threatened adverse consequence and employment actions against Plaintiff for his involvement and leadership role in ADDA.

59.  Plaintiff is informed, believes, and therefore alleges that Defendant Cooley, and all such Defendants, have continuously engaged in a pattern of illegal retaliation, threats of employment discrimination against Plaintiff directly and upon all such highly respected prosecutors who have been actively involved with ADDA.

60.  In 2009, Lacey applied for the position of U.S. Attorney for the Central District of California. This fact was a matter of public record widely know in the legal community and reported in the news media. Believing her to be unfit for such an appointment, Plaintiff announced his intention to actively participate in the subsequent political process in order to prevent Lacey from securing the appointment. Once Defendants became aware of Plaintiff's intentions, Lacey conspired with Cooley, Spillane, Moore and Matsumoto to threaten Plaintiff and deter him from exercising his rights under the First Amendment to the U.S. Constitution..

61. At all times, it is clearly established Federal Law that Plaintiff had a right to be free from government retaliation taken against him for acts of free speech that touches matters of public concern.  The right to be free of retaliation includes the right to be free

from adverse employment action substantially motivated by protected speech.

62.  At all times pertinent hereto, Defendants and each of them, knew, or should have known, of the aforementioned Constitutional Rights clearly established under Federal Law.

63.  Defendants' and each of their patterns and policies of Discrimination and Harassment with regard to Plaintiff, and all such situated Plaintiffs, has effected and hindered Plaintiff and other such members of ADDA from speaking out freely.

64.  Defendant's actions of Harassment, intimidation and Discrimination directly lead to their intended consequence, chilling free speech of Plaintiff and other such Plaintiffs who were members active in ADDA, so they would not speak out about public policy matters as they did not want to risk exposure to Defendants' policy or retaliatory discrimination.

65.  Defendants' Retaliatory Discrimination Policy against Plaintiff, and all such ADDA members, violates the right of free speech guaranteed by the First Amendment to the United States Constitution, made applicable to state and local governments through the Due Process Clause of the Fourteenth Amendment and is actionable pursuant to 42 U.S.C. Section 1983.

66.  Plaintiff has suffered injuries, damages and losses as a result of Defendants' conduct as stated forth herein.  These damages and losses have been incurred over a lengthy period of time and have increased specifically due to Defendants' acts of selective Discrimination and Retaliation.  As such Defendants should also be found liable for Punitive Damages herein.

## THIRD CAUSE OF ACTION

**(Violation of the U.S. Constitution, Amendment I-Freedom of Associaition)**

67.  Plaintiff hereby incorporates by reference all of the foregoing allegations as if fully set forth herein.

68.  At all times pertinent hereto, it was clearly established Federal Law Plaintiff had the right to Freedom of Association as guaranteed by the First Amendment to the Constitution of the United States.

69. At all times pertinent hereto, it was clearly established Federal Law that Plaintiff had a right to be free from actions, including harassment and discrimination, taken by a governmental employer intended to 'chill the exercise of these First Amendment Rights and Freedoms.

70.  At all times pertinent hereto, it was clearly established in Federal Law that the First Amendment right to Freedom of Association is violated by actions or threats of retaliation against persons, such as Plaintiff, desiring to exercise that right.  This is clearly the case for situations of actual retaliation occuring after the fact as well.

71.  At all times pertinent hereto, each Defendant knew, or should have known , of the aforementioned constitutional rights clearly established under Federal Law.

72.  Defendant Cooley, and all such Defendants, have attempted to defame, discredit, and disparage Plaintiff from exercising his Constitutional rights of freedom of speech and assembly. Defendants and each of them have a concerted and coordinated effort to effectuate a pattern of Discrimination designed to crush any potential opposition to their points of political interest.

73.  Accordingly Defendants' actions by way of consistently discriminating and retaliating against Plaintiff, violated Plaintiff's right of both freedom of association and freedom of speech, guaranteed by the First Amendment to the United States Constitution, made applicable to state and local governments through the Due Process Clause of the Fourteenth Amendment and is actionable pursuant to 42 U.S.C. Section 1983.

74.  As a legal and proximate result of the above-described conduct of said defendants, Plaintiff has sustained, and will continue to sustain severe and permenant physical, mental and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation and indignity, as well as other unpleasant physical, mental and emotional reactions, damages to reputation, and other non-economic damages, in addition to all recognized economic damages herein.

75.  As a further legal and proximate result of the above-described conduct of said Defendants, Plaintiff was and will be hindered, prevented, and/or precluded from performing Plaintiff's action and customary usual activities, work, education, and City Work, and other occupations, causing Plaintiff to sustain damages in the form of loss of income, wages, benefits, salary and other wage/benefit increases, as well as future loss of earning capacity, and other economic damages, in an amount to be ascertained according to proof herein.

76, As a further legal and proximate result of the above-described conduct of said defendants, Plaintiff suffered incidental, consequential, and/or special damages, in an amount to be determined according to proof.

77.  As a further legal and proximate result of the above-described conduct of said Defendants, plaintiffs have and will sustain Attorneys' Fees and Costs in an amount according to proof.

78.  Plaiintiff further requests pre-judgement interest as allowed by law.

79.  As the aforementioned acts directed specifically toward Plaintiff were carried out with such conscious disregard for Plaintiff's rights, and with such animosity and with the intention to vex, injure, and annoy Plaintiff, such as to constitute malice herein, Plaintiff is entitled to exemplary and/or Punitive Damages in a sum which is an amount appropriate to punish and set an example of the individual Defendants, and each of them, to act as a deterrent for such reprehensible conduct in the future, for them and all in the future.

80.  In 2005, Plaintiff sought promotion from being a Grade III to a Grade IV Deputy District Attorney. The promotion in question would have allowed Plaintiff to assume greater job responsibilities in addition to increasing his wages.

81.  Despite background qualifications and experience that exceeded most of the other applicants for the available positions, Defendants conspired to prevent Plaintiff from being within the eligible pool of potential appointees. Among other actions, Defendants assessed Plaintiff's ªAppraisal of Promotabilityº at a level lower than any of the other hundreds of applicants and promulgated at least one forged document in Plaintiff's personnel file. Defendants later admitted to the forgery. Plaintiff alleges that Defendants engaged in these actions in order to retaliate against him for engaging in political- and union-related activities. Defendants' actions directly resulted in Plaintiff not being promoted from 2005 to the present time.

82.  Plaintiff responded to Defendants' actions in denying him a promotion from Grade III to Grade IV by filing an administrative appeal to the Civil Service Commission in 2006. This was done after Plaintiff was specifically informed in writing by both the District Attorney's Office and the Los Angeles County Department of Human Resources that such would be Plaintiff's only avenue for appeal.

## IX. **PLAINTIFF HAS PROVED IMPROPER DISCRIMINATION**

83.   In 2006, the Civil Service Commission accepted jurisdiction over the matter, unanimously agreed that Plaintiff had made a prima facie case of improper discrimination, and awarded Plaintiff a full administrative hearing in order to render a final determination.

84.  The administrative hearing process mandated by the Civil Service Commission commenced in 2006 and ended abruptly in 2010. During that time period, Plaintiff expended more than three years' worth of time and financial resources in litigation against the District Attorney's Office. In 2010, the Commission on its own motion terminated the hearing. Although the Commission's purported justification was that it lacked jurisdiction over the proceedings, it should be noted: that the legal premises cited by the Commission actually pre-dated the hearings in question; and that nothing arose during the course of the hearing itself to alter the facts/law relied upon in order to confer the original grant of jurisdiction.

85.  The County's delayed actions as outlined caused Plaintiff to incur substantial expenses and prevented him from pursuing other potential appellate remedies. When Plaintiff subsequently sought to litigate these same issues in another forum (to wit, ERCOM), his petitions were dismissed as untimely.

## X.    DEFENDANTS INTENTIONAL PUNITIVE ACTIONS

86.  During the litigation of Plaintiff's Civil Service petition, Defendants conspired to take punitive and retaliatory measures against Plaintiff in order to gain tactical advantages during the proceedings. These tactics included interference with validly served subpoenas and politically motivated transfers as outlined elsewhere in this complaint.

## FOURTH CAUSE OF ACTION

## (VIOLATION OF U.S. CONSTITUTION, AMENDMENT XIV-EQUAL PROTECTION)

87. Plaintiff hereby incorporates by reference all of the foregoing allegations as if more fully set forth herein.

88.  The Equal Protection Clause of the Fourteenth Amendment requires government to treat similarly-situated persons equally.

89.  Defendants, by there actions, violated Plaintiff's rights under the Constitution to Assembly and Free Speech, in part because of his association and leadership with ADDA; whereas other similarly-situated County Employees were able to enjoy their Constitutional rights without any interference.

90.  Defendants have violated Plaintiff's fundamental constitutional rights by treating him in such a discriminatory manner.

91.  Defendants have no rational justification for their discrimination or actions which were and continue to violate First Amendment Rights of Plaintiff herein.

92. As a legal and proximate result of said actions by Defendants, and each of them, Plaintiff has sustained general damages in a sum to be determined by the Court.

93.   As a further legal and proximate result of the above-described conduct of said Defendants, Plaintiff was and will be hindered, prevented, and/or precluded from performing Plaintiff's action and customary usual activities, work, education, and City Work, and other occupations, causing Plaintiff to sustain damages in the form  of loss of income, wages, benefits, salary and other wage/benefit increases, as well as future loss of earning capacity, and other economic damages, in an amount to be ascertained according to proof herein.

## XI.  DEFENDANTS' CONTINUAL ACTS OF RETALIATION AS TO PLAINTIFF

94.  Defendants have actively sought to damage Plaintiff's career since Plaintiff first brought to the public's attention in 2006 the fact that Hazell committed prosecutorial misconduct during Hazell's prosecution of the capital case of People v. Adam Miranda. Hazell has been one of Cooley's closest friends and advisors since the two of them were college roommates many years ago.

95.  Miranda was charged with murder in two separate cases (hereinafter referred to as ªMiranda Iº and ªMiranda IIº). The jury trial in Miranda I concluded with a conviction and death sentence in 1982. The murder in Miranda II was used as a ªspecial circumstance,º making the defendant eligible for the death penalty in Miranda I under the theory of his having committed multiple murders. After being sentenced to death in Miranda I, the defendant pled guilty in Miranda II and received a life sentence in the second case in 1983. For the next 25 years, Miranda moved closer to execution as his appeals wound their way through state and federal court proceedings.

96.  Meanwhile, the defense filed a pair of habeas corpus petitions with the California Supreme Court citing prosecutorial misconduct by Hazell. The first petition alleged that the prosecution withheld exculpatory evidence from the defense in the form of several

eyewitness statements and even a confession indicating that another individual had actually committed the murder in Miranda II. Moreover, it was noted that in his closing arguments to the jury during the penalty phase in Miranda I, Hazell had specifically commented as follows about the defense's failure to present evidence refuting the prosecution's theory of the defendant's guilt in Miranda II: "It wasn't presented because it doesn't exist."

97.  After considering written briefs and oral arguments in the matter, the Supreme Court concluded that "the prosecution here plainly had a duty to disclose the evidence at issue before the penalty phase of petitioner's capital trial." The Court then vacated the death sentence in Miranda I and issued an order permitting the defendant to withdraw his plea of guilty in Miranda II. The opinion was unanimous, without concurrence or dissent.

98.  The second habeas petition was filed as result of information which Plaintiff publicly disclosed in connection with his own Civil Service proceedings. While personally prosecuting Miranda, and before the case was concluded, Hazell commenced a highly improper sexual liaison with a key witness for the prosecution in Miranda I, eventually impregnating her.

99.  Simultaneously, Hazell arranged to preside over a press conference wherein he handed over a check for an unusually large sum of "reward money" ($25,000) to that same witness — who was, incidentally, a stripper with a lengthy criminal record. Hazell did not disclose the fact of his relations with this witness and, with the complicity of Defendants, took active steps to shield his improper behavior from the defense and the public — including (failed) attempts to seal public documents.

26

100.  When served in 2006 with a Public Records Act request for all materials in the District Attorney's possession with respect to the Miranda cases, Cooley responded by issuing a statement that the District Attorney's Office was ªunable to locateº the files. The day after Plaintiff publicly revealed the details involving Hazell's scandalous conduct (2006), Cooley belatedly provided formal notification to the defense of the relationship in question — 24 years after it had begun.

101.  While the twin habeas petitions in the Miranda case continued to receive widespread coverage in the print and broadcast media, Cooley steadfastly refused several invitations to comment. Meanwhile, Cooley has promoted Hazell three times, most recently to the third-in-command position of Assistant District Attorney. Ironically, as part of his duties Hazell oversees the Public Integrity Division and chairs the Special Circumstances Committee, which monitors the prosecution of all capital cases in the County. Ultimately, the District Attorney's Office declined to re-try the Miranda II case, essentially conceding that there was insufficient evidence to prove him guilty of the crime charged.

### FIFTH CAUSE OF ACTION

### (Violation of U.S. Constitution, Amendment I and VIX-Monell Claims)

### (Plantiff Claims Against Defendant Steven Cooley, in his official capacity as the District Attorney for the County of Los Angeles)

102.  Plaintiff hereby incorporates by reference all of the foregoing allegations as if set forth fully herein.

103.  The acts of the individually named Defendants, as stated herein, occurred under color of law and constituted deprivations to the Plaintiff herein as to his rights secured by the First and Fourteenth Amendments to the United States Constitution.

104.  The acts of the individual Defendants named herein were undertaken pursuant to policies established and initiated by Defendant Cooley acting in his official capacity as the District Attorney of Los Angeles County and the County of Los Angeles. Specifically, Defendant Cooley instituted as a policy of the District Attorney of Los Angeles County a policy of and pattern of Discrimination specifically with regard to Plaintiff, James Bozajian, as well as to the members and potential members of ADDA. Defendant Cooley, and other Defendants, at his specific instruction, created a condition of fear, distrust, harassment, retaliation and discrimiation, as against Plaintiff and others, evidenced by transfers, matters of promotions, discipline for engaging in ADDA activity, or for engaging in protected acts of assembly and speech.

105.  These specific actions by Defendant Cooley and others, and pattern of Discrimination amounted to a deliberate indication of indeference to the constitutional rights of Plaintiff as stated herein.

106.  Defendant Cooley's policy of selective Discrimination as to Plaintiff and ADDA was the cause or moving force behind this underlying constitutional violation.

107.  Plaintiff has and continues to suffer injuries, damages, and losses as a result of the application of this pattern of selective discrimination violative of the constitution.

108.  Defendants have repeatedly used administrative regulations regarding ªprofessionalismº as a pretextual means of disciplining those (like Plaintiff) who become active in ADDA and otherwise oppose the District Attorney's political agenda.

28

109.  During Cooley's tenure in office, for example, at least two Deputy District Attorneys suffered unique consequences for breaking the law: They were promoted to management-level positions. Deputy District Attorney Richard Doyle was arrested for, charged with, and convicted of driving under the influence of alcohol (Vehicle Code Section 23152). Doyle was reportedly combative with the arresting police officers. Less than three months after being placed on criminal probation for that offense, Cooley promoted him to a management-level position. Shortly thereafter, Cooley elevated him to higher levels of management two more times. Deputy District Attorney Robert Foltz was also arrested for, charged with, and convicted of driving under the influence of alcohol (Vehicle Code Section 23152). When arrested, Foltz was actually driving one of the vehicles used in Cooley's campaign. Cooley twice promoted him to management-level positions after being placed on criminal probation.

110.  In 2008, Cooley, Spillane, Lacey, and Zajec ordered that Plaintiff be suspended without pay for five days. In 2010, Cooley, Spillane, Lacey, Moore, and Matsumoto ordered that Plaintiff be suspended without pay for 30 days. These suspensions were executed in retaliation for Plaintiff's political-and union-related activities, and are a direct product of Defendants' anti-union animus.

111.  During this same time period, then-ADDA President Steve Ipsen was suspended and served with a ªNotice of Intent to Terminate.º

112.  Since 2005, Cooley and his Administration (including Defendants) have been engaged in an ongoing dispute with the California District Attorneys Association (ªCDAAº). What began as a political discussion over the future of California's ªThree Strikesº statutes rapidly descended into a maelstrom embarrassing behavior on Cooley's part. Eventually, after leveling a series of public attacks against his colleagues, Cooley was obliged to resign from CDAA because of this intemperate conduct in 2006.

113.  In his resignation speech, Cooley compared the CDAA Board of Directors to the [former Soviet Union's] ªPolitburo.º He immediately implemented a policy prohibiting his deputies from participating in CDAA's multitude of educational activities and events. This edict was followed by an announcement that the District Attorney's Office was formally withdrawing its financial support for CDAA's extensive training and lobbying efforts. Finally, during a public speech to a group of criminal defense attorneys in 2006, he actually told California's 57 other District Attorneys to ªfuck off.º On numerous occasions since 2005, Plaintiff and ADDA have taken public positions in favor of CDAA in its political disputes with Cooley. This fact was well known to Defendants at all relevant time periods.

114.  Since 2005, ADDA has consistently and publicly opposed much of Cooley's political agenda on such issues as California's ªThree Strikesº law. This fact was well known to Defendants at all relevant time periods.

115.  After a jury granted an acquittal in the high-profile celebrity murder case of People v. Robert Blake in 2005, Cooley publicly stated that the verdict was rendered by an ªincredibly stupidº jury. Plaintiff and ADDA were critical of these remarks. This fact was well known to Defendants at all relevant time periods.

116.  In 2005-06, Cooley sued the citizens of Los Angeles County, at taxpayer expense, in an effort to overturn voter-imposed term limits and thereby extend his own tenure in office. Plaintiff and ADDA criticized this action. This fact was well known to Defendants at all relevant time periods.

117.  Since assuming office in 2000, Cooley has successfully lobbied for large pay raises for himself. From 2000 to the present time his salary increased by more than 100%, and he is now the County's highest paid elected official. Plaintiff and ADDA have

1   been critical of the extent of these increases. This fact was well known to Defendants at
2   all relevant time periods.

3
4   118.  Since 2008, Defendants have testified at numerous administrative hearings before
5   the Civil Service Commission and ERCOM, and at depositions relating to civil cases in
6   federal court. All of the referenced proceedings refer to matters involving ADDA, and
7   Plaintiff was involved in each one of them either as a party or named witness. On
8   several occasions, Defendants have provided false and misleading testimony under
9   oath. There have, in fact, been findings that some Defendants — including Cooley
10  himself — have given false testimony.

11  119.  From 2006 to 2011, Plaintiff was a named witness in the federal civil case of Eng
12  v. Cooley, et al. During the course of the proceedings, Plaintiff provided testimony and
13  exhibits adverse to the interests of Cooley and his Administration. This fact was well
14  known to Defendants at all relevant time periods.
15
16  120.  From at least 2003 onwards, Cooley has attempted to undermine Plaintiff's
17  political standing as an elected public official. In addition to many other actions, Cooley
18  personally contacted at least one member of the Calabasas City Council in 2008 to
19  thwart Plaintiff's authority as Mayor of Calabasas.
20
21  121.  In 2009 and 2010, Plaintiff actively (and successfully) worked to oppose Cooley's
22  campaign for California Attorney General. This fact was well known to Defendants at all
23  relevant time periods.
24  122.  Plaintiff, Bozajian, has and continues to suffer and sustain injuries, damages and
25  losses as a result of Defendants' and each of their actions in violating Plaintiff's
26  Constitutional Rights.  Plaintiff requests a decree of judgement as against all Defendants
27  herein, or those specifically responsible, for all damages stemming therefrom.
28
                                        31

**SIXTH CAUSE OF ACTION**

**(Violation of U.S. Constitution, Amendment I-Freedom of Speech**

123.   Plaintiff hereby incorporates by reference all of the foregoing allegations as if fully set forth herein.

124  .  At all times pertinent hereto, it was clearly established Federal Law Plaintiff had the right to Freedom of Speech as guaranteed by the First Amendment to the Constitution of the United States.

125.  . At all times pertinent hereto, it was clearly established Federal Law that Plaintiff had a right to be free from actions, including harassment and discrimination, taken by a governmental employer intended to 'chill the exercise of these First Amendment Rights and Freedoms.

126.   At all times pertinent hereto, it was clearly established in Federal Law that the First Amendment right to Freedom of Speech is violated by actions or threats of retaliation against persons, such as Plaintiff, desiring to exercise that right.  This is clearly the case for situations of actual retaliation occurring after the fact as well.

127.   At all times pertinent hereto, each Defendant knew, or should have known , of the aforementioned constitutional rights clearly established under Federal Law.

128.   Defendant Cooley, and all such Defendants, have attempted to defame, discredit, and disparage Plaintiff from exercising his Constitutional rights of freedom of speech and assembly. Defendants and each of them have a concerted and coordinated effort to effectuate a pattern of Discrimination designed to crush any potential opposition to their points of political interest.

32

129.   Accordingly Defendants' actions by way of consistently discriminating and retaliating against Plaintiff, violated Plaintiff's right of both freedom of association and freedom of speech, guaranteed by the First Amendment to the United States Constitution, made applicable to state and local governments through the Due Process Clause of the Fourteenth Amendment and is actionable pursuant to 42 U.S.C. Section 1983.

130.   .   As a legal and proximate result of the above-described conduct of said defendants, Plaintiff has sustained, and will continue to sustain severe and permanent physical, mental and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation and indignity, as well as other unpleasant physical, mental and emotional reactions, damages to reputation, and other non-economic damages, in addition to all recognized economic damages herein.

131.  As a further legal and proximate result of the above-described conduct of said Defendants, Plaintiff was and will be hindered, prevented, and/or precluded from performing Plaintiff's action and customary usual activities, work, education, and City Work, and other occupations, causing Plaintiff to sustain damages in the form of loss of income, wages, benefits, salary and other wage/benefit increases, as well as future loss of earning capacity, and other economic damages, in an amount to be ascertained according to proof herein.

132.  As a further legal and proximate result of the above-described conduct of said defendants, Plaintiff suffered incidental, consequential, and/or special damages, in an amount to be determined according to proof.

134. . As a further legal and proximate result of the above-described conduct of said Defendants, plaintiffs have and will sustain Attorneys' Fees and Costs in an amount according to proof.

136. . Plaintiff further requests pre-judgement interest as allowed by law.

137. . As the aforementioned acts directed specifically toward Plaintiff were carried out with such conscious disregard for Plaintiff's rights, and with such animosity and with the intention to vex, injure, and annoy Plaintiff, such as to constitute malice herein, Plaintiff is entitled to exemplary and/or Punitive Damages in a sum which is an amount appropriate to punish and set an example of the individual Defendants, and each of them, to act as a deterrent for such reprehensible conduct in the future, for them and all in the future.

138. In 2005, Plaintiff sought promotion from being a Grade III to a Grade IV Deputy District Attorney. The promotion in question would have allowed Plaintiff to assume greater job responsibilities in addition to increasing his wages.

139. Despite background qualifications and experience that exceeded most of the other applicants for the available positions, Defendants conspired to prevent Plaintiff from being within the eligible pool of potential appointees. Among other actions, Defendants assessed Plaintiff's ªAppraisal of Promotabilityº at a level lower than any of the other hundreds of applicants and promulgated at least one forged document in Plaintiff's personnel file. Defendants later admitted to the forgery. Plaintiff alleges that Defendants engaged in these actions in order to retaliate against him for engaging in political- and union-related activities. Defendants' actions directly resulted in Plaintiff not being promoted from 2005 to the present time.

140.  .  Plaintiff responded to Defendants' actions in denying him a promotion from Grade III to Grade IV by filing an administrative appeal to the Civil Service Commission in 2006. This was done after Plaintiff was specifically informed in writing by both the District Attorney's Office and the Los Angeles County Department of Human Resources that such would be Plaintiff's only avenue for appeal.

**WHEREFORE,** Plaintiff prays for judgement against Defendants, and requests that the Court:

A.) Adjudge, decree and declare the rights and other legal relations of the parties and to the subject matter and claims in controversy in order that such declarations shall have the force and effect of a final judgment and that the Court retain jurisdiction of this matter for the purpose of enforcing the Court's Orders;

B.) Pursuant to 28 U.S.C. Sections 2201, et. sec., declare that Defendants' policies and practices, as alleged herein, violated and do violate the First and Fourteenth Amendments to the United States Constitution.

C.) Award Plaintiff all such general damages as may be appropriate herein;

D) Award Plaintiff all exemplary damages and/or punitive damages against each individual Defendant in an amount sufficient to punish and set an example/deterrent of such individual defendants, in an amount to be determined by a jury herein;

E) Award Plaintiff damages in a sum and nature to be determined by a jury for injuries, physical and emotional, and all other appropriate non-economic damages .

F) Award Plaintiff damages in such sums to be determined by a jury, for loss of wages, income, earnings, earning capacity, benefits, future loss of earnings and earning

1 | capacity, advances or raises, and all other economic damages to be determined by a

2 | jury at the time of Trial herein;

3

4 |       G) Award Plaintiff damages fro such other actual, consequential, and/or incidental

5 | damages in such sums and nature as shall be determined by a jury;

6

7 |       H) Pursuant to 42 U.S.C. Section 1988 et. sec., and all other applicable law, an

8 | award is hereby requested for Plaintiff's costs and expenses incurred in the entirety of

9 | pursuing and bringing this action before this Court, including, but not limited to ,

10 | reasonable attorneys' fees;

11

12 |       I) Award to Plaintiff pre-judgement interest as available by law; and,

13

     J) Grant such other and further relief as the Court deems just and proper.

14

15 | **REQUEST FOR JURY TRIAL**

16

17 |   Plaintiff requests a Jury Trial for issues so Triable.

18 | DATED: January 24, 2012

19

20 |        Respecfully Submitted,

21

22 |        David J. Shapiro   (SBN.118325)

23 |        By:

24 |        David J. Shapiro

25 |        Attorney for Plaintiff James Bozajian

26

27

28

Name & Address:
David J. Shapiro, Esq.  SBA#118325
Law Offices of David J. Shapiro
22231 Mulholland Hwy. Ste. 207b
Calabasas, CA. 91302-5151

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JAMES BOZAJIAN

PLAINTIFF(S)

v.

COUNTY OF LOS ANGELES; STEVEN COOLEY,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY; CURTIS HAZELL, INDIVIDUALLY

DEFENDANT(S).

CASE NUMBER

CV12-00625 MMM (FMUx)

**SUMMONS**

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _David J. Shapiro_____, whose address is _22231 Mulholland Hwy Ste. 207b, Calabasas, CA. 91302-5151_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

JAN 2 4 2012

Dated: _____

Clerk, U.S. District Court

By: _____
    Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                **SUMMONS**

1 | David J. Shapiro, Esq   SBA#118325
Law Offices of David J. Shapiro
2 | 22231 Mulholland Hwy., Ste. 207b
Calabasas, CA. 91302-5151
3 | Telephone:  818-225-2929
Facsimile:   818-225-2870
4 | Email:      Lawdjs@yahoo.com

5

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **WESTERN DIVISION**

11

12 | JAMES BOZAJIAN,                                    )   CASE NO.
                                                   )
13 |        Plaintiff,                                )   COMPLAINT FOR DAMAGES,
                                                   )   INJUNCTIVE RELIEF, AND
14 |        V.                                        )   DECLARATORY RELIEF
                                                   )
15 | COUNTY OF LOS ANGELES; STEVE )
COOLEY, individually and in his           )
16 | official capacity; CURTIS HAZELL,        )   DEMAND FOR JURY TRIAL
individually and in his official capacity, )
17 | JOHN SPILLANE, individually and in  )
his official capacity; JOHN ZAJEC,        )
18 | individually and in his official capacity; )
JACQUELYN LACEY, individually         )
19 | and in her official capacity, JANET      )
MOORE, individually and in her           )
20 | official capacity ; SHARON               )
MATSUMOTO; and DOES 1-10;           )
21 |        Defendants.                           )
                                                   )
22 | ___                                             )
                                                   )
23

24

25

26

27

28

---

1
**COMPLAINT**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>BOZAJIAN, JAMES | DEFENDANTS<br>Cooley, Steven, D.A.; Hazell, Curtis, D.A., Spillane,John, D.A.; Zajec, John, D.A.; Lacey, Jacquelyn, D.A.; Moore, Janet, D.A., Matsumoto, Sharon, D.A. |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>David J. Shapiro, Esq.<br>22231 Mulholland Hwy. Ste. 207b, Calabasas, CA. 91302-5151<br>818-225-2929 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff        ☐ 3 Federal Question (U.S. Government Not a Party)

☑ 2 U.S. Government Defendant      ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No        ☑ **MONEY DEMANDED IN COMPLAINT: $** According to Proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
United States Constitution I Free Speech; Freedom to Assemble, IVX Equal Protection, Pattern of Discrimination and Harassment; 28 U.S.C.1343; 42 U.S.C.1983;et. sec.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 443 Housing/Acco- mmodations | SOCIAL SECURITY | | ☐ 861 HIA (1395ff) |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | ☑ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:   Case Number: _____ CV12-00625 _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑Yes
If yes, list case number(s): CV 09-7931 ODW (SSx)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☑A. Arise from the same or closely related transactions, happenings, or events; or
   ☑B. Call for determination of the same or substantially related or similar questions of law and fact; or
   ☑C. For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date January 24, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

### CV12- 625 MMM (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[_] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[_] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.