O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES BOZAJIAN,<br><br>           Plaintiff,<br>    v.<br><br>COUNTY OF LOS ANGELES; STEVE COOLEY, individually and in his official capacity; CURTIS HAZELL, individually and in his official capacity; JOHN SPILLANE, individually and in his official capacity; JOHN ZAJEC, individually and in his official capacity; JACQUELYN LACEY, individually and in her official capacity; JANET MOORE, individually and in her official capacity; SHARON MATSUMOTO, individually and in her official capacity and DOES 1–10;<br><br>           Defendants. | Case No. 2:12-cv-00625-ODW(JCx)<br><br>**ORDER DENYING DEFENDANTS' CONVERTED MOTION FOR SUMMARY JUDGMENT [41], MOTION TO DISMISS [34], AND MOTION TO STRIKE [35]** |

Defendants County of Los Angeles, Steve Cooley, Curtis Hazell, John Spillane, John Zajec, Jacquelyn Lacey, Janet Moore, and Sharon Matsumoto filed three motions with this Court. The first is Defendants' Motion to Dismiss. (ECF No. 34.) The Court converted the Motion to Dismiss into a motion for summary judgment on the sole issue of statute of limitations (i.e., the second motion). (ECF No. 41.) The third motion is Defendants' Motion to Strike. (ECF No. 35.) For the reasons explained below, the three motions are **DENIED**.[1]

---

[1] Having considered the papers filed in support of and in opposition to these motions, the Court deems the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## I. BACKGROUND

Plaintiff James Bozajian has been employed since 1990 as a Deputy District Attorney ("Deputy DA") for the County of Los Angeles. (SAC ¶ 8.) Defendant Steve Cooley was the District Attorney for the County of Los Angeles, and Defendants Curtis Hazell, John Spillane, John Zajec, Jacquelyn Lacey, Janet Moore, and Sharon Matsumoto were top ranking officials in the Cooley administration. (SAC ¶¶ 10–11.) Bozajian alleges that Defendants illegally discriminated against him at work, in matters pertaining to promotions, transfers, and discipline. (SAC ¶ 11.)

Cooley and Bozajian used to be friends—but through the years, they parted ways. (SAC ¶¶ 23–25.) Bozajian served on the Board of Directors for the Association of Deputy District Attorneys ("ADDA"), an organization that Cooley allegedly approved of at one time. (SAC ¶¶ 23–28.) After Cooley's 2000 election victory, Bozajian claims that Cooley changed—he became critical of the ADDA. (SAC ¶¶ 29–32.) Cooley allegedly urged Bozajian to not seek reelection to the ADDA Board of Directors, and admitted that Bozajian was one of his top political enemies. (SAC ¶¶ 29–30, 33.)

Bozajian's Second Amended Complaint recounts various incidents between 2001 and 2010 where Defendants discriminated against him for either (1) affiliating with the ADDA, or (2) criticizing the Cooley administration. For instance, between 2001 and 2010, Bozajian's duty assignments were changed annually, something Bozajian claims is highly unusual for a Deputy DA of his seniority. (SAC ¶¶ 34–35.) He also alleges that these transfers were punitive, and happened not only to him, but to other top Deputy DAs that criticized Cooley. (SAC ¶¶ 36, 39–42, 88–99.)

Bozajian admits that he publically criticized some of Cooley's actions, as well as those of Cooley's closest allies. For example, in 2005, Bozajian and the ADDA criticized Cooley for: his lawsuit seeking to overturn voter-imposed term limits; his political stance towards California's Three Strikes law; and his derogatory comments concerning a jury that acquitted Robert Blake of murder. (SAC ¶¶ 43–46.) Bozajian

also uncovered an instance of prosecutorial misconduct concerning a sexual-relationship cover-up, openly opposed Cooley in his 2008 reelection, and criticized Lacey in her 2009 efforts to become United States Attorney for the Central District of California. (SAC ¶¶ 54–72, 100–104, 114–118.)

In addition to the punitive assignment transfers, Bozajian alleges that Defendants retaliated against his constitutionally protected activities by: unfairly denying him a promotion; improperly lowering his performance review; suspending him; and ransacking his office. (SAC ¶¶ 47–49, 51–53, 73–75, 102–104, 119–131.)

Ultimately, Bozajian received a 30-day suspension, which began on January 25, 2010. In response, Bozajian filed a complaint on January 26, 2010, with the Los Angeles County Civil Service Commission ("LACCSC"). (SAC ¶ 132–133.) Bozajian subsequently filed this federal suit and withdrew his complaint with the LACCSC. (SAC ¶ 135.)

Defendants now seek to dismiss Bozajian's claims, contending that he: (1) is barred under the statute of limitations; (2) fails to allege with sufficient specificity what individual defendants have done; and (3) fails to state a *Monell* claim against the County. (ECF No. 34.) The Court converted the Motion to Dismiss, as to the statute of limitations issue, into a motion for summary judgment under Federal Rule of Civil Procedure 12(d). (ECF Nos. 40, 41.) Defendants also filed a Motion to Strike portions of Bozajian's Second Amended Complaint, alleging those portions are immaterial, impertinent, and scandalous. (ECF No. 35.) The Court first turns to the statute of limitations issue.

## II.  MOTION FOR SUMMARY JUDGMENT

**A.  Legal standard**

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.     Bozajian's conduct suffices to invoke equitable tolling**

Defendants assert that the two-year statute of limitations has run for Bozajian's civil rights claims. (Mot. Summ. J. at 3.) On October 19, 2009, Bozajian received a letter titled "Notice of Intent to Suspend." (SAC ¶ 119.) On January 6, 2010, he received a "Notice of Suspension" letter. (SAC ¶ 129.) He then filed a complaint with the LACCSC on January 26, 2010, to contest his suspension. (SAC ¶ 132.) About two years later on January 24, 2012, he initiated this federal suit.

The controlling statute of limitations for a claim arising under the Civil Rights Acts of 1866 and 1871 is the most appropriate one provided by state law. *Donoghue v. County of Orange*, 848 F.2d 926, 930 (9th Cir. 1987). The parties do not dispute that Bozajian's claims are governed by the two-year statute of limitations under California Code of Civil Procedure section 351.1. And depending on the date of accrual for Bozajian's claims, he may have run out of time.

Assuming that the two-year statute of limitations has expired, Bozajian raises the defense of equitable tolling. Along with the limitations period, federal courts borrow a state's equitable tolling rules for cases under the Civil Rights Acts, absent a reason not to do so. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 486–87 (1980). California's equitable tolling doctrine has three requirements: (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence against the second claim; and (3) good faith and reasonable conduct by the plaintiff. *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137–38 (9th Cir. 2001). Defendants only attack the good faith and reasonable conduct requirement. The Court finds no evidence suggesting that the first two requirements are not satisfied. And because Defendants have been on notice of Bozajian's allegations in his LACCSC complaint, there is no prejudice to them in gathering evidence for this federal case.

The good faith and reasonable conduct requirement is not satisfied where a plaintiff "simply allowed the statute on his second claim nearly to run or deliberately misled the defendant into believing the second claim would not be filed." *Id.* at 1138. But equitable tolling can still apply where a plaintiff voluntarily terminated an alternate proceeding. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 111–12 (2008).

Defendants allege that the good faith and reasonable conduct requirement is not met because Bozajian strategically dropped his LACCSC complaint. (Mot. Summ. J. 5.) In response, Bozajian explained that:

- An attorney provided by the American Federation of State, County, and Municipal Employees ("AFSCME") represented Bozajian in his LACCSC complaint. (Bozajian Decl. ¶ 3.)
- After about a year, in January 2011, Bozajian's attorney had to withdraw because AFSCME withdrew funding—and so, Bozajian continued pro se in his case because he could not afford an attorney. (*Id.* ¶¶ 14–18.)

- Despite lasting another five months, Bozajian decided to drop his LACCSC complaint due to his workload and inexperience with civil cases. (*Id.* ¶¶ 17–20.)
- Bozajian then obtained an attorney on contingency to take up his cause, and filed this federal suit on January 24, 2012. (*Id.* ¶¶ 22–23.)

Given this evidence, the Court concludes that Bozajian acted reasonably and in good faith under the circumstances. The fact that he dropped his other proceeding does not show that he acted in bad faith. Other than this fact, Defendants cite no other evidence of bad faith.

Defendants also claim that equitable tolling should not apply because Bozajian is now pursuing different remedies than those in his LACCSC complaint. (Mot. Summ. J. 4.) Yet the purpose of equitable tolling is to allow a plaintiff, when possessing several potential remedies as to one wrong, to pursue only one remedy as to that wrong and not lose the possibility of pursuing other remedies down the road. *Daviton*, 241 F.3d at 1141. Here, the wrong that Bozajian alleges in both his LACCSC complaint and this federal suit is that of discrimination and retaliation for exercising his First Amendment rights. The remedies, however, are different—but this does not preclude Bozajian from seeking redress in this lawsuit given the similar underlying facts between his two cases.

Thus, the Court finds that Bozajian is entitled to equitable tolling.

### III. MOTION TO DISMISS

Bozajian's Second Amended Complaint asserts four causes of action: (1) violation of the First Amendment (freedom of speech) against all individual Defendants; (2) violation of the First Amendment (freedom of speech) against the County; (3) violation of the First Amendment (freedom of association) against all individual Defendants; and (4) violation of the Fourteenth Amendment (equal protection) against all individual Defendants. Defendants' Motion to Dismiss addresses two overarching problems with the Second Amended Complaint—that it:

fails to adequately allege what the individual Defendants have done; and fails to state a *Monell* claim against the County. The Court addresses these two arguments in turn.

**A.     Legal standard**

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but does not go so far as to impose a "probability requirement." *Id.* Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice. *Id.* Instead, the complaint must allege sufficient underlying facts to provide fair notice and enable the defendant to defend itself effectively. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as

true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be blindly accepted as true by the court. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Yet, a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

**B.     Bozajian states sufficient facts to raise a right to relief**

Defendants argue that the claims against them are overly broad and fail to "provide any insight as to the conduct of the individual defendants." (Mot. Dismiss 7–8.) Defendants contend that Bozajian's vague allegations, spanning over a ten-year period, lack sufficient details to state a claim for relief, provide insufficient notice to give Defendants an opportunity to defend, and improperly meld all Defendants together as tortfeasors.

The Court notes that Bozajian primarily directs his allegations towards Cooley. For instance, Bozajian alleges that: Cooley told him not to seek re-election to the ADDA Board of Directors (SAC ¶ 29); Cooley ordered punitive transfers for Bozajian (SAC ¶ 38); and Cooley stated that Bozajian was one of his top political enemies (SAC ¶ 33). Bozajian then asserts that the remaining individual Defendants—Hazell, Spillane, Zajec, Lacey, Moore, and Matsumoto—are top ranking Cooley-administration officials that carried out Cooley's discrimination campaign against him. (SAC ¶¶ 11–14.)

Yet there are few specific allegations against these other Defendants. For example, the only allegation specifically against Moore is that she signed the "Notice and Intent to Suspend" letter. (SAC ¶¶ 119–120.) Similarly, the only allegation specifically against Matsumoto is that she wrote and signed the "Notice of Suspension" letter. (SAC ¶ 130.) But Bozajian also alleges that both these acts—along with others—were performed under orders from Cooley and his staff. (SAC

1 ¶¶ 123–128.) Unlike in *Iqbal*, these facts are sufficient to state a cause of action
2 against each of the individual Defendants.

3       In *Iqbal*, the plaintiff pleaded that his jailers "kicked him in the stomach,
4 punched him in the face, and dragged him across his cell without justification." 556
5 U.S. at 668. Then, plaintiff concluded that defendants Ashcroft and Mueller "knew
6 of, condoned, and willfully and maliciously agreed to subject him to harsh conditions
7 of confinement as a matter of policy, solely on account of his religion, race, and/or
8 national origin." *Id.* at 680–81. The Supreme Court ruled that while these alleged
9 acts may give rise to a claim of relief against individual jailers (who were not named
10 as defendants), these facts do not suffice for a claim against Ashcroft and Mueller
11 because the pleaded facts do not suggest that the top U.S. law-enforcement officers
12 adopted "a policy of classifying post-September-11 detainees as of high interest
13 because of their race, religion, or national origin." *Id.* at 682–84.

14       In contrast, Bozajian alleges specific acts committed against him by top
15 officials in the Cooley administration. He also alleges specific acts committed against
16 him by Cooley. Bozajian then concludes that because of the individual Defendants'
17 rank and close relationship with Cooley, they all had knowledge of the wrongdoing
18 and were responsible. This contrasts with *Iqbal*, where the allegedly wrongful acts
19 were committed by low-level employees—many pay grades below that of Ashcroft
20 and Mueller—and presumably committed without express orders from them. But
21 here, Bozajian's allegations plausibly suggest that the individual Defendants—all top
22 ranking Cooley-administration officials—carried out Cooley's order and thus, each
23 had a hand in violating his constitutional rights. Thus, the Court finds that the Second
24 Amended Complaint states sufficient facts for relief against the individual Defendants.

25 **C.    Bozajian states sufficient facts for a *Monell* claim**

26       Municipalities can be held liable under section 1983 actions in three
27 circumstances: (1) the employee acted according to an expressly adopted official
28 policy; (2) the employee acted as a final policymaker; or (3) the employee acted

according to a longstanding practice or custom. *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). In order to establish liability under a custom or practice, the plaintiff must show that the pattern of activity is persistent, widespread, and well-settled policy. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Bozajian alleges, as discussed above, retaliatory acts designed to punish him for exercising his first amendment rights, including punitive transfers, denial of promotion, poor performance reviews, and suspension. Although Bozajian only seeks redress for the suspension commencing on January 25, 2010, these other wrongful acts committed against him suggest that the Cooley administration had an informal practice of discriminating against those who affiliated with the ADDA or are critical of the Cooley administration. Further, Bozajian includes additional examples of this discriminatory practice applied to other Deputy DAs, such as the punitive transfers of Steve Ipsen and Marc Debbaudt. (SAC ¶¶ 39–42, 88–99.) Finally, by alleging these wrongful acts in light of his seniority and Cooley's direct remarks against him and the ADDA, Bozajian presents sufficient evidence to suggest that these retaliatory acts carried out by Cooley's staff, were done under direct orders from Cooley himself—the final policymaker at the Los Angeles County District Attorney's Office. In short, assuming all of the allegations are true, the Court finds that the events complained about by Bozajian were plausibly performed under Cooley's orders in retaliation against Bozajian's criticism and his association with the ADDA. And thus, this is sufficient to support a *Monell* claim against the County.

## IV. MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a 12(f) motion to strike is to avoid the expenditure of time and money in litigating spurious issues by disposing of them prior to trial. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

/ / /

As to Defendants' request to strike punitive damages, Bozajian properly seeks punitive damages against the individual Defendants, not in their official capacities, but in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). And as to Bozajian's allegations of retaliatory acts committed by the individual Defendants towards other Deputy DAs under the Cooley administration, these incidents are relevant to demonstrate a custom or practice, through which Bozajian may establish *Monell* liability against the County. The Court finds no reason to strike these portions of the Second Amended Complaint.

Further, the Court also finds no reason to strike the portions of the Second Amended Complaint that narrate Defendant Hazell's affair with a death penalty witness or refer to Cooley's use of investigators to gag media coverage. The Hazell affair supports Bozajian's claims that Cooley retaliated against him for exposing this incident. And the gagging account is another example of Cooley's discrimination against the ADDA and those involved with the organization. Moreover, the Court does not find any of these allegations to be scandalous or offensive. Therefore, Defendants' Motion to Strike is **DENIED**.

## V. CONCLUSION

For the above reasons, the Court **DENIES** Defendants' Motion for Summary Judgment, Motion to Dismiss, and Motion to Strike. (ECF Nos. 34, 35, 41.) Defendants shall file their answer to the Second Amended Complaint within 14 days of this order.

**IT IS SO ORDERED.**

Dated: January 28, 2013

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**